UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JOSEPH IANTOSCA, individually and as      )
trustee of the Faxon Heights Apartments    )
Realty Trust and Fern Realty Trust, et al.,   )
                                            )
            Plaintiffs,                      )
                                            )
      v.                                     )   CASE NO:  1:11-mc-0066-RLY-DML
                                            )
BENISTAR ADMIN SERVICES, INC.,             )
                                            )
            Defendant.                       )

## Order on Motion to Quash Subpoena

This matter came before the court on the motion (Dkt. 1) by numerous persons and

entities, identified below ("movants"),[1] to quash a subpoena (Dkt. 1-1) issued from this court and

served by the United States on JP Morgan Chase Bank, N.A. ("Chase Bank").  The subpoena

seeks financial records involving the movants and any accounts held by them from January 1,

2000, to the present (the "Subpoena").

Daniel Carpenter and his wife Molly Carpenter are two of the movants.  All the other

movants are entities that are, or were, related in some way to Daniel Carpenter.  *See* United

States' Opposition to Motion to Quash ("Opposition Brief") at Dkt. 11-1. The "Benistar"-named

entities are or were related to one another, and some of them are or were related to the

---

[1]      The movants are:  Daniel Carpenter, Molly Carpenter,  Benistar Admin Services, Inc.,
Benistar 419 Plan Services, Inc.,  Benistar 419 Plan & Trust, Benistar Admin Services Employee
Stock Ownership Plan, Benistar Insurance Group, Inc., Benistar Group, Ltd., Benistar Ltd., Inc.,
Benefit Concepts International, Inc., Benefit Concepts, Inc., Benistar Property Exchange Trust
Company, Inc., Benistar Employer Services Trust Corporation, Carpenter Financial Group, Inc.,
Carpenter Financial Group Employee Stock Ownership Plan, Carpenter Group, Ltd., Inc.,
BPETCO Litigation Group, LLC, BPETCO Litigation Group, Inc., STEP Plan Services, Inc.,
and STEP Multiple Employer Supplemental Benefit Plan & Trust.

"Carpenter"-named entities and the "STEP"-named entities. (*Id.,* including 2006 testimony by Daniel Carpenter before the United States Tax Court).[2]

### Underlying Litigation

The case for which the United States is seeking the subpoenaed financial records is pending in the District of Massachusetts ("Massachusetts Litigation"). The plaintiffs in the Massachusetts Litigation are judgment-creditors of Daniel Carpenter and of various "Benistar" and "Carpenter" entities related to Daniel Carpenter; they have a judgment in the approximate amount of $20 million. *See Iantosca v. STEP Plan Services, Inc.,* 604 F.3d 24, 27 (1st Cir. 2010). STEP Plan Services, Inc. and several "Benistar" entities (including Benistar Admin Services, Inc. and Benistar 419 Plan Services, Inc.) are owed settlement proceeds of about $4.5 million from unrelated litigation. The plaintiffs in the Massachusetts Litigation are seeking those settlement proceeds in partial satisfaction of their judgment. *Id.* at 28. The United States has intervened in the Massachusetts Litigation, asserting that it holds $1.12 million tax liens against two of the Benistar entities, Benistar Admin Services, Inc. ("Benistar Admin") and Benistar 419 Plan Services, Inc. ("Benistar 419"); the United States claims a right to the same settlement proceeds and asserts that its tax liens have priority over the plaintiffs' judgment. STEP Plan Services, Inc. has also staked a competing claim to the settlement proceeds, asserting that it is not indebted to the plaintiffs in the Massachusetts Litigation or to the United States. It further

---

[2]     For example, Benistar 419 Plan Services, Inc. and STEP Plan Services, Inc. share a corporate parent, Benistar Group, Ltd. Further, at some point, Benistar 419 Plan Services was owned (in whole or in part) by one of the "Benistar Concepts" companies which, in turn, was owned by one of the "Carpenter" companies which, in turn, is or was owned by Daniel Carpenter. *See* Dkt. 11 at p. 11. In addition, in state court litigation, a court ruled that a judgment against Benistar Property Exchange Trust Company (which is or was related to the "BPETCO" entities) was collectible against a "Carpenter" company and several other "Benistar" companies. *See Iantosca v. Step Plan Services, Inc.,* 604 F.3d 24, 27-28 (1st Cir. 2010) (describing earlier state court litigation).

maintains that the settlement achieved in the unrelated litigation was made for its benefit and not for the benefit of any Benistar entities that could be indebted to the plaintiffs or to the United States.

In addition, Collection Due Process ("CDP") administrative hearings in which Benistar Admin and Benistar 419 are challenging the government's tax liens are pending before the Internal Revenue Service.

## Challenges to the Subpoena

The movants seek to quash the Subpoena because (a) some of the movants whose financial records are sought were not served a copy of the Subpoena in compliance with Connecticut law; (b) the Subpoena violates 26 U.S.C. § 6330(e)(1), which requires the suspension of "levy actions" when a CDP hearing is pending; and (c) the Subpoena is overly broad. In its response to the motion to quash, the United States maintains as a threshold matter that none of the movants except Mr. Carpenter has standing to challenge the Subpoena. It also asserts that (a) Connecticut law does not apply, (b) the Subpoena is not a levy action within the meaning of the Code, and (c) the documents it seeks are relevant to matters at issue in determining the validity and priority of the tax liens in the underlying Massachusetts Litigation.

## Analysis

### A.      The movants have standing to challenge the Subpoena.

The parties agree that a person has standing to "move to quash a subpoena addressed to another if the subpoena infringes on the movant's legitimate interests." *United States v. Raineri,* 670 F.2d 702, 712 (7th Cir. 1982). The United States contends that only individuals, and not business entities, can have interests in their financial records maintained by banks, and thus only individuals have standing to quash a subpoena seeking bank records. The United States does not

cite any authority for this proposition. Instead, it cobbles together two judicially-recognized principles: that individuals have "heightened" privacy interests in their financial records and standing to challenge a subpoena seeking their bank records, and that corporations do not enjoy the *same* level of privacy protection as individuals. On this basis it asks the court to conclude that business entities therefore do not have standing to object to subpoenas for their financial records maintained by banks. But the inferential leap the United States asks the court to make is not supported by these principles. First, the decisions it cites recognizing individuals' privacy interests in financial records as grounds for standing do not suggest that business entities would lack standing. Second, the authorities the United States cites for the principle that the privacy interests of businesses are not as strong as those of individuals authorities, all of which were decided outside the standing context, are a far cry from a determination that business entities don't even have standing in the first place to assert privacy protections.

The court finds that each movant whose banking records are sought by the Subpoena or about whom the records provide financial information has a legitimate interest in the privacy of that information sufficient to confer standing to challenge a Subpoena directed to its bank for those records. This includes every movant except Benistar Property Exchange Trust Company, Inc., Benistar Employer Services Trust Corporation, and Molly Carpenter. The Subpoena does not name Mrs. Carpenter or these two Benistar entities as persons whose financial documents are being sought, and they have not set forth any other basis from which the court could conclude that they have a "legitimate interest" in challenging the Subpoena.[3]

**B.      The United States' failure to serve the Subpoena on each movant/non-party as required by Connecticut law does not invalidate the Subpoena.**

---

[3]      Further, even if the Connecticut statute (discussed *infra*) applied, the movants concede it would confer standing only on those movants whose financial records are being sought. (Movants' Memorandum in Support of Motion to Quash, Dkt. 2, at p. 5).

The movants contend that because they are citizens of Connecticut, the United States was required by Connecticut law to serve a certified copy of the Subpoena on each movant who is not a party to the Massachusetts Litigation, and that its failure to do so invalidates the Subpoena. The Connecticut statute reads:

> Except as provided in section 36a-44, a financial institution shall disclose financial records pursuant to a lawful subpoena, summons, warrant or court order served upon it if the party seeking the record causes such subpoena, summons, warrant or court order or a certified copy thereof to be served upon the customer whose records are being sought, at least ten days prior to the date on which the records are to be disclosed . . . .

Connecticut General Statutes § 36a-43(a). Even if this statute applied in this federal proceeding (which is doubtful), its purpose has been met because all movants have had the opportunity to challenge the Subpoena before financial records have been disclosed. There is no basis— whether under Connecticut law or any other law—to invalidate the Subpoena because of any lack of service or notice to each person or entity whose records are being sought by the Subpoena.

**C.    The Subpoena does not violate the Revenue Code's suspension of levy actions pending a CDP hearing.**

The movants' primary substantive basis for moving to quash the Subpoena is that the Subpoena is being used by the United States to discover assets on which to execute its tax liens, which they say violates the suspension provisions of section 6330(e)(1) of the Internal Revenue Code ("IRC"), which states:

> [I]f a hearing is requested under subsection (a)(3)(B), the levy actions which are the subject of the requested hearing . . . shall be suspended for the period during which such hearing, and appeals therein, are pending. In no event shall any such period expire before the 90th day after the day on which there is a final determination in such hearing. Notwithstanding the provisions of section

7421(a),[4] the beginning of a levy or proceeding during the time the suspension under this paragraph is in force may be enjoined by a proceeding in the proper court. . . .

26 U.S.C. § 6330(e)(1) (footnote added).

The referenced hearing—under IRC subsection 6330(a)(3)(B)—is the CDP hearing that Benistar Admin and Benistar 419 initiated to challenge the tax liens, and the parties agree that "levy actions" are suspended under the above statute. The parties disagree, however, whether the Subpoena is a "levy action." The statute itself does not define "levy actions" and neither party cites any authority defining the phrase. The movants contend that the only purpose of the Subpoena is to discover assets that could be used to satisfy the tax liens and therefore the Subpoena is a precursor to or beginning of an eventual levy that is suspended by the statute and should be enjoined (or here, quashed) by the court. The United States sets forth several reasons why the documents it is seeking are relevant to issues in the Massachusetts Litigation. It also notes that an IRS regulation expressly refers to the initiation of "judicial proceedings to collect the tax shown on the CDP Notice" as "non-levy collection actions." *See* 26 C.F.R. § 301.6330-1(g)(2).

With no authority from the movants to convince it otherwise, the court finds that the issuance of the Subpoena cannot reasonably be viewed as a "levy action" subject to the statute. First, the common understanding of the term "levy" for tax purposes is the "seizure and sale of property," *see EC Term of Years Trust v. United States,* 550 U.S. 429, 430-31 (2007), and the Subpoena effects neither a seizure nor a sale. Second, the Subpoena is a proper procedural

---

[4]      IRC subsection 7421(a) is the Anti-Injunction Act, which prohibits suits to restrain the government's assessment and collection of taxes. Section 6330(e)(1) thus creates an exception to the Anti-Injunction Act, allowing a "proceeding in the proper court" to enjoin a levy initiated by the United States while the suspension is in force. *See Springer v. Internal Revenue Service ex rel. United States,* 231 Fed. Appx. 793, 797-98 (10th Cir. 2007).

vehicle for a litigating party to obtain information relevant to claims in litigation. Because the United States has been permitted to intervene in the Massachusetts Litigation to protect any interest it has in the settlement proceeds and to assert its priority over competing claimants (and apparently there has been no contention that its intervention is itself a "levy action"), the United States also has the right to discovery in pursuit of its claims. The court will not stretch the phrase "levy action" to cover the pursuit of discovery in a pending lawsuit.

**D.      The movants have not met their burden to show that the Subpoena is overbroad.**

The movants' final objection to the Subpoena is that it is "far too broad" in seeking records of persons and entities other than Benistar Admin and Benistar 419 (against which there are tax liens) and in seeking records dating to January 2000. (Dkt. 2 at p. 3). They argue that the records have no possible relevance to the Massachusetts Litigation because the records cannot shed light on whether the government's tax liens are valid or have priority over the Massachusetts plaintiffs' judgment. The court disagrees. As the United States has argued, a central issue in the Massachusetts Litigation concerns whether and to what extent the United States' tax liens may attach to settlement proceeds ostensibly belonging to persons or entities other than Benistar Admin and Benistar 419 (such as STEP Plan Services, Inc.). The United States' discovery into the bank records of the numerous entities that, like Benistar Admin and Benistar 419, have (or have had) common parents or other close corporate relationships and that trace their genesis through Mr. Carpenter may lead to the discovery of evidence admissible on the United States' alter ego and nominee theories that all settlement proceeds should be deemed to belong to Admin and 419. The records may demonstrate an intertwining of finances probative of the kind of control material to the alter ego and nominee theories. The records additionally may reveal the entity or entities that controlled the litigation that produced the $4.5 million

settlement, a factor also relevant to the nominee and alter ego theories. Bank records dating back to 2000 may not be necessary for that purpose (since the litigation was not initiated until 2004), but litigation control is not the only control the United States seeks to show. As noted above, the United States is pursuing a theory that the entities are (or were) so closely intertwined that they are alter egos of each other, including Benistar Admin and Benistar 419.

The United States also makes a persuasive showing that the financial records for Benistar Admin, Benistar 419, and Benistar 419 Plan & Trust may lead to admissible evidence regarding the validity of Benistar Admin's and Benistar 419's tax liens. The liens arise from tax penalties imposed on Benistar Admin and Benistar 419 for their failures to provide certain information as alleged "material advisors" to Benistar 419 Plan & Trust. Bank records may shed light whether they were material advisors by leading to evidence that they provided "material, aid, assistance, or advice" to the Plan & Trust or derived certain income. *See* IRC § 6111(b)(1)(A). The validity of the tax liens may be an issue in the Massachusetts Litigation, as many of these movants argued to the Massachusetts court in opposing the United States' intervention in that case. (*See Iantosca et al. v. Benistar Admin Services, Inc., et al.,* D. Mass, Case No. 1:08-cv-11785-NMG, Dkt. 198 at p. 5) (arguing that the legitimacy of the tax lien can be challenged in the Massachusetts Litigation).

In short, the United States has proffered logical theories for the relevance of the subpoenaed financial records to issues in the Massachusetts Litigation. Other than asking the court to quash the Subpoena in its entirety, the movants have offered no alternative scope to the Subpoena's time frame or list of entities. They have not made a sufficient demonstration that the Subpoena overreaches in terms of its temporal scope or the scope of entities involved. *See, e.g., Boyer v. Gildea,* 2008 WL 4911267 at *4 (N.D. Ind. Nov. 13, 2008) (burden is on party

objecting to discovery to show why the discovery is improper); *Richter v. Mutual of Omaha Ins. Co.,* 2006 WL 1277906 at *2 (E.D. Wis. May 5, 2006) (burden on person seeking to quash subpoena to show that the discovery is overly broad, unduly burdensome, or not relevant).

## Conclusion

For the foregoing reasons, the movants' motion (Dkt. 1) to quash the Subpoena to Chase Bank is DENIED. The court's stay of Chase Bank's obligations under the Subpoena (*see* Order Staying Obligations Under Subpoena and Setting Briefing Schedule, Dkt. 7) is HEREBY LIFTED, and Chase Bank shall comply with the Subpoena within ten days.

So ORDERED.


Dated: ___07/26/2011_____

_Debra McVicker Lynch_
      Debra McVicker Lynch
      United States Magistrate Judge
      Southern District of Indiana




Distribution:

Edna Sybil Bailey
WILSON ELSER MOSKOWITZ EDELMAN & DICKER
edna.bailey@wilsonelser.com

Bridget L. O'Ryan
O'RYAN LAW FIRM
boryan@oryanlawfirm.com

Austin L. Furman
U.S. DEPARTMENT OF JUSTICE
austin.l.furman@usdoj.gov